UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: _____

KAMANIE RAMJATTAN f/k/a
KAMANIE SOOKDEO,

    Plaintiff,

vs.

NEW YORK LIFE INSURANCE COMPANY,
SUZANNAH L. RICHARDS, KAREN
BABWAH, and JOHN DOES 1-5,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Kamanie Ramjattan, formerly known as Kamanie Sookdeo ("Ramjattan"), through undersigned counsel, for her Complaint against Defendants, New York Life Insurance Company ("New York Life"), Suzannah L. Richards ("Richards"), Karen Babwah ("Babwah"), and John Does 1-5, alleges as follows:

## PARTIES

1. Ramjattan maintains a primary residence and is domiciled in the Republic of Trinidad and Tobago, and is a citizen of a foreign state within the meaning and intent of 28 U.S.C. § 1332.

2. New York Life is a corporation organized under the laws of the state of New York, with its principal place of business in the state of New York. New York Life is a citizen of the State of New York within the meaning and intent of 28 U.S.C. § 1332. New York Life is authorized to do business in the State of Florida.

1

3. Richards maintains a primary residence and is domiciled in the State of Florida, and is a citizen of the State of Florida within the meaning and intent of 28 U.S.C. § 1332.

4. Babwah maintains a primary residence and is domiciled in the State of Florida, and is a citizen of the State of Florida within the meaning and intent of 28 U.S.C. § 1332.

5. John Does 1-5 are the yet to be identified beneficiaries of a life insurance policy issued by New York Life to Kenny Sookdeo ("Sookdeo"). John Does 1-5 are believed to have wrongfully received death benefits earmarked for Ramjattan due to the fraudulent and/or negligent actions of one or more of the Defendants.

## JURISDICTION AND VENUE

6. There is complete diversity of citizenship between Plaintiff and Defendants within the meaning and intent of 28 U.S.C. § 1332 and the amount in controversy exceeds the sum of $75,000, exclusive of interest and cost of suit. Therefore, this Court maintains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7. Venue is proper in the United States District Court, Southern District of Florida, Ft. Lauderdale Division, as a material part of the events giving rise to this cause of action occurred in Sunrise, Florida, in this District.

## FACTUAL BACKGROUND

8. Sometime prior to May 26, 2009, New York Life issued life insurance Policy Number 45564749 (the "Policy") to Sookdeo. The face amount of the Policy was $250,000.

9. Kenny Sookdeo ("Sookdeo") and Ramjattan were brother and sister.

10. Prior to May 26, 2009, Sookdeo took approximately $150,000 from Ramjattan, without her knowledge, to support a struggling business during the economic crisis.

11. After his theft was discovered, on May 26, 2009, Sookdeo executed a Collateral Assignment of the Policy in favor of Ramjattan in the amount of $150,000.  *See* Collateral Assignment attached hereto as Exhibit A.

12. New York Life approved of the Collateral Assignment executed in favor of Ramjattan, endorsing it on June 5, 2009.  *See* Exhibit A.

13. On June 5, 2009, Ramjattan agreed to refer to the stolen funds as a "loan" secured by the Collateral Assignment in a signed and notarized document wherein Sookdeo once again confirmed that Ramjattan was entitled to $150,000 of the $250,000 death benefit of the Policy in the event of his death.  *See* Loan Agreement attached hereto as Exhibit B.

14. Sookdeo died on September 8, 2017.

15. After Sookdeo's death, Ramjattan was informed by New York Life that the Collateral Assignment was allegedly cancelled on or about February 4, 2015.

16. Ramjattan did not sign any purported Release of Assignment and was unaware of the purported cancellation prior to Sookdeo's death.

17. Moreover, the signature on the Release of Assignment is not Ramjattan's signature, but is a forgery.  *See* Release of Assignment attached hereto as Exhibit C.

18. After retaining counsel who obtained documentation from New York Life, Ramjattan discovered that on February 23, 2015, Babwah emailed the forged Release of Assignment to Richards, a New York Life agent in Sunrise, Florida.  *See* Email Sting attached hereto as Exhibit D.

19. On February 24, 2015, rather than conduct any kind of investigation into the validity of the Release of Assignment, Richards simply forwarded it to New York Life for processing.  *See* Exhibit D.

20. According to the Release of Assignment form, the Release must be executed in duplicate, with one copy being retained by the company and one copy being returned to the Assignee. *See* Exhibit C.

21. The Release of Assignment does not contain any signature for New York Life and is also undated for signature by a corporate officer. *See* Exhibit C.

22. Further, the Release of Assignment, which was provided by New York Life, also contains no writing within a specified box, labeled "FOR OFFICE USE ONLY." *See* Exhibit C.

23. Additionally, the Release of Assignment does not contain a date within the box labeled, "Date Received Stamp Here." *See* Exhibit C.

24. The Release of Assignment is ineffective, invalid and has no effect.

25. After disputing cancellation of the Assignment, in a letter dated October 30, 2017, New York Life claimed that Ramjattan was informed of the Release of Assignment via telephone on September 1, 2017, and did not question the Release. *See* October 30, 2017 Letter attached hereto as Exhibit E. The statements contained within New York Life's letter dated October 30, 2017 are materially false.

26. New York Life admits that it has paid the death benefit of the Policy to the exclusion of Ramjattan on the basis of the forged Release of Assignment.

27. When presented with evidence that the Release of Assignment was a forgery, and that New York Life failed to notify Ramjattan of the Assignment's cancellation, New York Life essentially took the position that it is not their problem.

28. Ramjattan has not waived any rights that she possesses through the Collateral Assignment or through any conduct, whether oral or written, either prior to or subsequent to Sookdeo's death.

## CAUSES OF ACTION

29. Kamanie incorporates the allegations contained in Paragraphs 1-28 as if fully restated herein.

### COUNT I
### Declaratory Judgment

30. Pursuant to the Collateral Assignment, Ramjattan was the assigned beneficiary of $150,000 of the $250,000 Policy on Sookdeo.

31. Ramjattan is entitled to a declaratory judgment, rendering the purported Release of Assignment, attached hereto as Exhibit C, as being null and void, on the basis that the Release of Assignment was never accepted by New York Life.

32. Alternatively, Ramjattan is entitled to a declaratory judgment, rendering the purported Release of Assignment, attached herein as Exhibit C, as being null and void on the basis that Ramjattan never received notice of the cancellation of the Assignment from New York Life.

33. Alternatively, Ramjattan is entitled to a declaratory judgment, rendering the purported Release of Assignment, attached herein as Exhibit C, as being null and void on the basis that the Release of Assignment is a fraudulent document as the signature on the alleged Release is not the signature of Ramjattan.

34. Ramjattan is further entitled to a declaratory judgment, awarding her $150,000 of Sookdeo's Policy pursuant to the valid Collateral Assignment.

### COUNT II
### Negligence

35. On information and belief, Richards is a captive insurance agent employed by New York Life.

36. On February 23, 2015, while working in the employ of New York Life, Richards received an email from Babwah attaching the forged Release of Assignment.

37. Rather than contacting Sookdeo or Ramjattan to verify the authenticity of the document, Richards merely forwarded the forged Release of Assignment to New York Life for processing the following day.

38. On information and belief, New York Life received the forged Release of Assignment from Richards on or about February 24, 2015.

39. Rather than contact Sookdeo or Ramjattan to verify the authenticity of the document, New York Life accepted the forged document without conducting any investigation.

40. Rather than demand an original signed Release of Assignment, or duplicate originals as required by the plain language of the form, New York Life accepted an electronic copy of the forged Release of Assignment.

41. Upon the death of Sookdeo, New York Life ignored the valid Collateral Assignment and paid the death benefit to Babwah and/or John Does 1-5.

42. New York Life owed a duty to Ramjattan, as beneficiary of the Collateral Assignment, to adhere to the rules set forth on its own forms concerning releases of assignments. Specifically, the Release of Assignment form plainly states that it "must be made in duplicate." *See* Exhibit C.

43. Had New York Life followed its own rules and required duplicates, thus returning one to Ramjattan, this fraud would have been uncovered at the time it happened.

44. By failing to follow its own rules, New York Life failed to provide Ramjattan with an opportunity to contest the forgery until after the death benefit was paid.

45. Based on the manner in which the Release of Assignment appears to have been obtained by New York Life, through its agent, both Richards and New York Life knew or should have known that the Release of Assignment was fraudulent, in some form or fashion.

46. New York Life breached its duty to Ramjattan by carelessly accepting and approving a forged document, failing to conduct a reasonable investigation into the validity of the form, and by failing to follow its own rules that it put in place to prevent fraud from occurring in the first place.

47. Richards' and New York Life's actions in this regard were unreasonable.

48. As a result of the unreasonable and negligent actions of both Richards and New York Life, Ramjattan has been damaged.

## COUNT III
### Fraud

48. The Release of Assignment is a forgery.

49. On information and belief, Ramjattan's name on the Release of Assignment was intentionally forged by Babwah, daughter of Sookdeo, without authorization, and forwarded to Richards, agent for New York Life, with the specific intent to cancel the valid Collateral Assignment.

50. Babwah, and any accomplices, knew that they were not authorized to sign Ramjattan's name on the Release of Assignment.

51. Babwah, and any accomplices, intended for New York Life to rely on the forged signature and cancel the Collateral Assignment.

52. New York, despite its own negligence, did in fact rely on the forged Release of Assignment in cancelling the Collateral Assignment.

53. These actions by Babwah, and any accomplices, were done with specific intent to defraud Ramjattan and/or New York Life.

54. As a result of the actions of Babwah, and any accomplices, Ramjattan has been damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Ramjattan prays for a judgment of this Court in her favor on the Complaint, and all damages, including punitive damages and/or penalties, attorneys' fees, expert witness fees, costs, interest, and all other relief as allowable by law.

Date:  October 12, 2018.

Respectfully submitted,

/s/ Joel Ewusiak
**Joel Ewusiak**
Fla. Bar No.:  0509361
Ewusiak Law, P.A.
6601 Memorial Highway, Suite 311
Tampa, FL 33615
Telephone:  727.286.3559
Facsimile:  727.286.3219
Email:  joel@ewusiaklaw.com
*Local Counsel for Plaintiff, Kamanie Ramjattan a/k/a Kamanie Sookdeo*

**Michael J. Hoover**
*(Pro Hac Vice Forthcoming)*
LA Bar No. 35497
Interpleader Law, LLC
9015 Bluebonnet Blvd.
Baton Rouge, Louisiana 70810
Telephone: (225) 246-8706
Email: michael.hoover@interpleaderlaw.com
*Trial Counsel for Plaintiff, Kamanie Ramjattan a/k/a Kamanie Sookdeo*